USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/19/05

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X
PURISMA ANDRADA, individually and on
behalf of others similarly situated,

        Plaintiffs,

- against -                         05 Civ. 00061(RJH)

ATHEROGENICS, INC., MICHAEL HENOS,
RUSSELL MEDFORD, MARK COLONNESE,
and ROBERT SCOTT,

        Defendants.
------------------------------------X
------------------------------------X
VALERIE FAULKNER, individually
and on behalf of others similarly situated,

        Plaintiffs,

- against -                         05 Civ. 1938 (RJH)

ATHEROGENICS, INC., MICHAEL HENOS,        **MEMORANDUM**
RUSSELL MEDFORD, MARK COLONNESE,     **OPINION AND ORDER**
and ROBERT SCOTT,

        Defendants.
------------------------------------X

        Presently before the Court are two securities fraud actions brought against certain officers and directors of Atherogenics, Inc. ("Atherogenics") and Atherogenics itself (collectively, "defendants") on behalf of a purported class of investors who claim to have sustained losses arising out of defendants' alleged materially false statements issued between September 28, 2004 and December 31, 2004. Three parties have independently moved to consolidate the actions, be appointed as lead plaintiff and designate their

1

respective counsel as lead counsel pursuant to the procedures set forth by the Private Securities Litigation Reform Act, 15 U.S.C. §78u-4(a)(3)(B) ("PSLRA").

For the reasons set forth below, the Court consolidates the actions, appoints the Billings Group as lead plaintiff and designates Milberg Weiss Bershad & Schulman LLP ("Milberg Weiss"), Chitwood & Harley and Dyer & Shuman LLP ("Dyer & Shuman") as co-lead counsel. The remaining motions are denied to the extent that they are inconsistent with this Opinion and Order.

## BACKGROUND

The complaint in the first, above-captioned actions was filed by Purisma Andrada on January 5, 2005. On that same day, Purisma's counsel, Schiffrin & Barroway, LLP, caused a notice to be published on the web site, Yahoo! Finance, advising purchasers of Atherogenics stock that (1) a class action against defendants had commenced in the Southern District of New York; (2) the class included all plaintiffs who had purchased Atherogenics stock between September 28, 2004 and December 31, 2004; (3) the complaint asserted claims charging defendants with, *inter alia*, artificially inflating its stock price through alleged misrepresentations and failing to disclose material information regarding the results of certain clinical trials performed on its anti-inflammatory agent, AGI-1067, targeting atherosclerosis; and (4) any class member wishing to serve as lead plaintiff or choose lead counsel was required to move the court within sixty days.

On March 7, 2005, the Billings Group, South Ferry, L.P. II ("South Ferry") and Russell Jeffords separately filed motions to consolidate these actions, appoint lead

plaintiff and designate lead counsel. Defendants have joined the requests to consolidate the actions and have not otherwise moved to oppose the remaining motions.

**DISCUSSION**

I. Consolidation of the Actions

The Billings Group, South Ferry and Jeffords have moved to consolidate both actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure. Defendants have joined these motions to consolidate the actions. Rule 42(a) provides that a court may order all actions consolidated if they involve "common issues of law or fact." Fed. R. Civ. P. 42(a). In determining the propriety of consolidation, district courts have "broad discretion" although they generally espouse the view that "considerations of judicial economy favor consolidation." *Ferrari v. Impath, Inc.*, No. 03 Civ. 5667 (DAB), 2004 WL 1637053, at *2 (S.D.N.Y. July 20, 2004) (citations and quotations omitted). Moreover, consolidation is particularly appropriate in the context of securities class actions if the complaints are "based on the same 'public statements and reports'" and defendants will not be prejudiced. *Id.*, 2004 WL 1637053, at *2 (internal quotations omitted).

Both actions implicate similar or overlapping claims under Section 10(b) and Section 20(a) of the Securities Exchange Act of 1934, as well as Rule 10b-5 promulgated thereunder, that defendants issued several misleading press releases regarding the clinical trials of AGI-1067 between September 28, 2004 and December 31, 2004. Accordingly, both actions involve "common issues of law and fact" and are hereby consolidated under the caption of "*In re Atherogenics Securities Litigation*". All relevant documents and

3

submissions shall be maintained as one file under Master File No. 05 Civ. 0061 (RJH). All actions now pending or subsequently filed in this district that arise out of or are related to the same facts as alleged in the current actions shall be consolidated for all purposes upon application to the Court.

II. <u>Appointment of Lead Plaintiff</u>

　　A. *The Notice and Filing Requirements Under the PSLRA*

The Billings Group, South Ferry and Jefford have independently moved to be appointed as lead plaintiff. The PSLRA sets forth the procedures governing the appointment of lead plaintiff in "each action arising under the [Securities and Exchange Act of 1934] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1). As an initial matter, the PSLRA requires the plaintiff in the initial action to cause notice to be published in a national, business-oriented publication within 20 days of filing the complaint. 15 U.S.C. §78u-4(a)(3)(A)(i). The notice must inform members of the purported class of (1) the details and pendency of the action; and (2) their right to seek appointment as lead plaintiff within 60 days after the date on which notice is published. *Id.* Within 90 days after the publication of such notice, a court shall consider any motion made by any class member, regardless of whether they are individually named as plaintiffs in any of the actions, and shall appoint the "most adequate plaintiff" as lead plaintiff. 15 U.S.C. §78u-4(a)(3)(B)(i). Moreover, the PSLRA instructs courts to appoint lead plaintiff in a timely fashion after the consolidation decision has been rendered. *See* 15 U.S.C. §78u-

4(a)(3)(B)(ii); *The Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 322 (S.D.N.Y. 2004).

Purisma Andrada filed the initial complaint in this series of actions and caused a notice to be published in the web site, Yahoo! Finance, on January 5, 2005. That notice set forth the pendency of the action, the claims asserted therein, the purported class action period and the right of any class member to seek appointment as lead plaintiff. Accordingly, the notice satisfied the requirements of the PSLRA and triggered the sixty-day period in which class members could move to be appointed as lead plaintiff.

The Billings Group, South Ferry and Jeffords subsequently filed motions to be appointed as lead plaintiff on March 7, 2005, thereby falling within the sixty-day period. Accordingly, all the parties have filed in a timely fashion and satisfied the procedural requirements of the PSLRA.

### B. *The Most Adequate Plaintiff*

In 1995, Congress enacted the PSLRA to address perceived abuses in securities fraud class actions created by lawyer-driven litigation. *Ferrari*, 2004 WL 1637053, at *3; see H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ("H.R. Conf. Rep. No. 104-369"). The PSLRA sought to ensure that "parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs counsel." *Ferrari*, 2004 WL 1637053, at *3 (internal citations and quotations omitted). Moreover, Congress specifically encouraged institutional investors and other class members with large amounts at stake to step forward as the ideal lead plaintiffs in private securities litigation. *See* H.R. Conf. Rep. No. 104-369.

5

The PSLRA thus provides that the most adequate plaintiff has (1) "the largest financial interest" in the relief sought by the class and (2) satisfies the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. §78u-4(a)(3)(B)(iii). However, the PSLRA expresses little guidance in prescribing a uniform method for assessing a party's financial loss. In light of this silence, courts have examined several factors such as: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." *Pirelli Armstrong Tire Corp. v. LaBranche & Co., Inc.*, No. 03 Civ. 8264 (RWS), 2004 WL 1179311, at *7 (S.D.N.Y. May 27, 2004) (quoting *Lax v. First Merchants Acceptance Corp.*, No. 97 Civ. 2715 (DHC), 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)); *In re Olsten Corp. Sec. Litigation*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998).

The Billings Group, South Ferry and Jeffords have submitted affidavits along with moving papers in support of their respective claims that they have individually suffered the greatest financial loss. At first glance, the Billings Group appears to have sustained the largest financial loss in the amount of $710,253.51. (Saxena Decl., Ex. C.) In comparison, South Ferry claims to have sustained losses of $223,137.00 (Egleston Decl., Ex. B), while Jeffords claims a loss of $41,845.00. (Alba Decl., Ex. C.)

South Ferry nevertheless contends that the financial losses purportedly sustained by the Billings Group are grossly overstated to the extent that three of its members – Robert L. Billings ("R. Billings"), Michelle H. Billings ("M. Billings") and Andrew R. May ("May") – were net sellers of Atherogenics securities during the relevant class period. (South Ferry Reply Mem. in Further Supp. of Mot. for Consolidation,

Appointment as Lead Plaintiff and Approval of Selection of Counsel ("South Ferry Reply Mem.") at 2.) Because R. Billings, M. Billings and May had acquired certain shares prior to the class period and subsequently sold more shares than they had purchased during the class period, South Ferry argues that the Billings Group has actually profited from the alleged artificial price inflation of Atherogenic's securities and therefore has no legally cognizable financial interest in the action. (South Ferry Mem. in Opp'n to Competing Motions for Lead Plaintiff and Selection of Lead Counsel ("South Ferry Opp'n Mem.") at 3.) In effect, South Ferry seeks to remove any claimed losses by R. Billings, M. Billings and May under the *Lax* analysis, thereby reducing the Billings Group's losses to $86,479.80. (*Id.* at 5.)

The Billings Group responds that the *Lax* analysis is silent as to whether the "net" approach or the "first-in-first-out" ("FIFO") accounting methodology, which purportedly supports the entirety of its losses, is applied to the fourth prong – e.g., the approximate losses suffered. (Billings Group Reply Mem. in Further Supp. of Mot. for Appointment as Lead Plaintiff and For Approval of its Selection of Co-Lead Counsel ("Billings Group Reply Mem.") at 6 n.5.) Specifically, the Billings Group asserts that the "net seller" approach should be rejected because it "understates class members damages" and provides defendants with "an undeserved windfall." (*Id.* at 5.) According to the Billings Group, the FIFO methodology more accurately reflects an investor's losses because it matches each sale of shares to the oldest shares in the account during the class period in chronological order. (*Id.* at 3.) The Billings Group further urges that under FIFO, the "net seller" concept is "irrelevant since the court is only concerned with damages related to class period *purchases*." (*Id.*)

There is substantial merit in South Ferry's position to the extent that a "net purchaser will, presumably, have a greater interest in the litigation, because he or she was induced by the fraud to purchase shares ... and has been left 'holding the bag' when the fraudulent inflation is revealed." *In re McKesson HBOC, Inc. Securities Litigation*, 97 F. Supp. 2d 993, 996-97 (N.D. Cal. 1999) (calculating the total cash outlays minus cash receipts during the same period and rejecting FIFO methodology in determining the largest financial interest because the latter approach could "mask significant class period receipts if there were extensive pre-class holdings"); *In re Comdisco Securities Litigation*, 150 F. Supp. 2d 943, 945 (N. D. Ill. 2001) (rejecting application of FIFO methodology and finding that net seller's transactions during the class period "caused it to derive unwitting benefits rather than true losses from the alleged securities fraud"); *In re Cardinal Health, Inc. Securities Litigation*, 226 F.R.D. 298, 308 (S.D.N.Y. 2005) (remarking that "courts usually reject these so-called net-gainers as lead plaintiffs, opting for net losers that will have less trouble proving damages"). Moreover, the two cases on which the Billings Group heavily relies embrace FIFO methodology in the context of rejecting challenges to the proposed class representative's typicality during class certification. *See Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Systems, Inc.*, No. 01 Civ. 20418 (JW), 2004 U.S. Dist. LEXIS 27008, at *11 (N.D. Cal. May 27, 2004); *In re Schering-Plough Corporation Securities Litigation*, No. 01 Civ. 829 (KSH), 2003 U.S. Dist. LEXIS 26297, at *25 (D.N.J. Oct. 10, 2003).

At this juncture, the Court need not resolve whether the "net" approach or FIFO methodology should apply in assessing whether Billings Group's true financial loss is $710,253.51 or $86,479.80. Even assuming that South Ferry has marshaled the greatest

financial loss resulting from defendants' inflated stock prices, South Ferry faces insurmountable difficulties in satisfying the additional requirements articulated in Rule 23. Specifically, Rule 23 sets forth four prerequisites – colloquially termed as numerosity, commonality, typicality and adequacy – in evaluating the propriety of class certification, although only typicality and adequacy are relevant to the selection of lead plaintiff. *The Constance Sczesny Trust*, 223 F.R.D. at 323-24. Typicality rests on whether the movant's "claim arises from the same course of events" and whether "each class member makes similar legal arguments to prove the defendants' liability" even if there are minor variations in the factual allegations. *Id.* at 324 (internatl citations and quotations omitted). In evaluating adequacy, courts have assessed factors such as: (1) the size, available resources and experience of the proposed lead plaintiff, *Pirelli Armstrong Tire Corp.*, 2004 WL 1179311, at *20 (citing cases); (2) the qualifications of the proposed class counsel, *The Constance Sczesny Trust*, 223 F.R.D. at 324 (citing *In re Deutsche Telekom Ag Securities Litigation*, 229 F. Supp. 2d 277, 282 (S.D.N.Y. 2002)); and (3) any potential conflicts or antagonisms rising among purported class members. *In re Deutsche Telekom Ag Securities Litigation*, 229 F. Supp. 2d at 282 (citations omitted).

As the Billings Group points out, South Ferry "*only* purchased call options and not any of the underlying Atherogenics common stock that most putative class members purchased." (Billings Group Reply Mem. at 8.) Were South Ferry to be appointed lead plaintiff for the entire class, factual issues specific to South Ferry in determining the precise value of the options – e.g., the maturity, the volatility of the price of the Atherogenics stock, the level of short term interest rates, and the competitive structure of the market in which the options are traded – would likely "threaten to become the focus

of the litigation." *Weikel v. Tower Semiconducter Ltd.*, 183 F.R.D. 377, 391 (D.N.J. 1998) (rejecting certification of class representative who had only purchased Euro Options where factual issues regarding value of options and damages would divert focus from the underlying securities litigation); *Margolis v. Caterpillar, Inc.*, 815 F. Supp. 1150, 1156 (C.D. Ill. 1991) (since option holder's claim was "not typical of stock purchaser's claim," option holder could "only represent a class of option holders, not stock holders.") As an options holder, South Ferry is potentially subject to unique defenses irrelevant to regular stock purchasers in the class, *see* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II), as well as standing challenges. *The Constance Sczesny Trust*, 223 F.R.D. at 325 (noting that "some courts have dismissed securities fraud claims where their losses resulted from alleged omissions"); *In re Arakis Securities Litigation*, No. 95 Civ. 3431 (ARR), 1999 WL 1021819, at *3 (E.D.N.Y. April 27, 1999) (noting that the law as to whether options traders have standing to assert 10b-5 claims is "unsettled"). Significantly, South Ferry has failed to identify a single instance in which an option holder was deemed to be an appropriate lead plaintiff for an entire securities fraud class action.[1] Accordingly, the Court concludes that South Ferry's motion to be appointed lead plaintiff fails because South Ferry is both atypical and inadequate to support the entire class.

Moving then to the Billings Group, the Court finds that the Billings Group, like the other putative class members in this action, has asserted that it purchased

---

[1] Indeed, the cases cited by South Ferry involved situations in which the court declined to create a *separate* subclass of option holders. *See In re Microstrategy Inc. Securities Litigation*, 110 F. Supp. 2d 427, 440 (E.D. Va. 2000) (declining to appoint option holder as lead plaintiff for separate subclass of option holders); *In re Orbital Sciences Corp. Securities Litigation*, 188 F.R.D. 237, 238 (E.D. Va. 1999) (consolidating related actions even though stock purchasers and option holders were not factually identical).

10

Atherogenics stock during the relevant class period and was injured by false and misleading representations made by defendants in violation of the Securities and Exchange Act. As such, its interests are more clearly aligned with the remainder of the class and can represent a broader segment of the class without incurring potential conflicts or antagonisms within the class.[2] Accordingly, the Court appoints the Billings Group as lead plaintiff.

III. Appointment of Lead Counsel

The Billings Group has further moved to appoint Milberg Weiss, Chitwood & Harley and Dyer & Shuman as co-lead counsel. (Billings Group Mem. at 12.) The PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel." 15 U.S.C. §78u-4(a)(3)(B)(v). The resumes submitted by the Billings Group indicate that each of the law firms has attained substantial litigation experience in prosecuting securities fraud class actions. Accordingly, the Court designates Milberg Weiss, Chitwood & Harley and Dyer & Shuman as co-lead counsel.[3]

---

[2] To the extent that South Ferry attacks May and Michelle Fortunato of the Billings Group as "day traders" and therefore atypical of the class, the Court notes that South Ferry has failed to identify any substantive concerns that would undermine either plaintiff's ability to represent the class. *See In re Royal Ahold N.V. Securities and ERISA Litigation*, 219 F.R.D. 343, 354 (D. Md. 2003) (rejecting typicality challenge to purported day trader). Indeed, "where false information and misleading omissions pollute the market, all types of investors are injured." *Id.* (internal citations omitted).

[3] While the Court will accept at this juncture lead plaintiff's choice of co-lead counsel, the Court observes that appointing three law firms as co-lead counsel "is not without some inherent risk to the class." *See In re Crayfish Co. Securities Litigation*, No. 00 Civ. 6766 (DAB), 2002 WL 1268013, at *6 (S.D.N.Y. June 6, 2002). As such, the Court reserves the right to modify the co-lead counsel structure in the event that it determines that co-lead counsel's work has become duplicative, unnecessary or otherwise wasteful.

IV. <u>Conclusion</u>

The actions are hereby consolidated under the caption "*In re Atherogenics Securities Litigation*" under the Master File No. 05 Civ. 00061 (RJH). The Court further appoints the Billings Group as lead plaintiff and Milberg Weiss, Chitwood & Harley and Dyer & Shuman as co-lead counsel.

SO ORDERED

Dated: New York, New York
April 18, 2005

Richard J. Holwell
United States District Judge